MONITOR STOVE & RANGE CO. v. L. J. MUELLER FURNACE CO.

(Circuit Court of Appeals, Seventh Circuit. October 1, 1918. Rehearing Denied November 9, 1918.)

No. 2550.

1. PATENTS ⬦⟿328—CONSTRUCTION—INFRINGEMENT.
    The Short patent, No. 933,128, for a hot-air heater, claim 1, which specified the combination with a floor, of a heater having a drum, means for heating said drum, a second drum, etc., and a third drum, etc., *held* not infringed.

2. PATENTS ⬦⟿323—CONSTRUCTION—INFRINGEMENT.
    The Doyle and Wollenhaupt patent, No. 1,133,242, for a furnace, claims 1, 2, and 3, which emphasized two concentric circumferential casings surrounding said heater, etc., *held* not infringed.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Bill by the Monitor Stove & Range Company against the L. J. Mueller Furnace Company. From a decree dismissing the bill, complainant appeals. Affirmed.

Suit to enjoin infringement of patent No. 933,128, to Robert L. Short, for hot-air heater, and patent No. 1,133,242, to William J. Doyle and J. J. Wollenhaupt, for a furnace. Bill dismissed.

William R. Wood, of New York City, for appellant.
Arthur L. Morsell, of Milwaukee, Wis., for appellee.

Before BAKER, MACK, and EVANS, Circuit Judges.

EVAN A. EVANS, Circuit Judge. [1] Appellant, as assignee of patentees' rights, charged appellee with infringing claim 1 of the Short patent, No. 933,128, and claims 1, 2, and 3 of the Doyle and Wollenhaupt patent, No. 1,133,242. The District Judge found the claims of both patents here involved to be invalid and dismissed the bill.

The Short patent, to quote from the specifications—

"relates to air-heating systems, and it has particular reference to a heater which is depressed below the floor level; the upper surface of the heater being supported upon the floor and consisting of an open grate structure similar to that employed in the hot-air register. * * * The heater is intended especially for use with gas. It has advantage of economy in the use of fuel, of greater heating capacity, and of use in such positions that the heater occupies practically no space in the rooms where used."

The patentee further states in his specifications:

"In the ordinary hot-air systems where a large furnace is employed, with hot-air pipes leading to registers throughout the building; there is necessarily a great loss of heat incident to the transmission of the hot air from the furnace to the various registers and in the incidental heating of the said con-

---

ducting pipes. Furthermore, in the use of such furnaces, when but little heat is required, there is always considerable loss due to the employment of a large furnace. In my heater this loss is almost entirely avoided, for the reason that there are no conducting pipes to be heated, and, the heater being located immediately beneath the floor of the room to be heated, there can be no loss due to any of the above-mentioned causes. My system of heating, therefore, has the advantage of locating the heat at the various points needed, the heating devices so located being under the absolute control from the room to be heated, whereby a great convenience in control of the heating devices is secured."

While the foregoing description clearly pictures the structure the patentee had in mind, and the drawing accompanying the specifications, herewith reproduced,

emphasizes the limitations of the invention as disclosed by the specifications, it is claimed by appellant that simply a preferred form of structure is thus set forth in the specifications and the drawing; that in reality the combination covered the triple casing pipeless furnace which has grown much in favor during the past few years. Much testimony was received and appellant favors us with an elaborate argument in support of the advantages of a triple casing pipeless furnace over the double casing type. Appellee, on the other hand, contends that the turning point in this litigation does not involve any such question in the least.

The differences between a pipeless furnace and the furnace with pipes running to the various rooms are quite familiar. In furnaces with pipes carrying the hot air to the different rooms, we have a fur-

nace body proper surrounded with a single casing forming an air space, which air space incloses the radiating surface of the heating body. Cold air is admitted into the bottom of this compartment surrounding the furnace body, and this air receives heat from the radiating surface and passes through the upper part of the compartment to a series of hot-air conduits which lead to the registers of the rooms to be heated.

In the pipeless furnace system, the furnace body is surrounded by a plurality of casings, each spaced from the other. Instead of taking the cold air from the bottom, this style of furnace employs a single large register for the entire house, positioned at a convenient place on the ground floor; the furnace being immediately under and communicating directly with the single register. The inner casing is contracted above the furnace radiator and forms a central opening communicating with the central portion of the single register, while the annular opening forming the spacing between the outer and inner casings communicates with the outer or annular portion of the register. Cold air enters through this outer annular spacing, and passes downward between the two casings to the bottom portion of the furnace, then passes inwardly under the inner casing, which does not extend to the floor and upwardly between the inner casing and the radiating surface of the furnace body, becoming heated thereby, and emerging through the central part of the register to the ground floor of the house.

The triple casing type of pipeless furnace differs from the one just described in that an additional inner casing is provided. Referring to Figure 1, the cold air enters the margin of the register and descends between the outer casing 2 and the middle casing having a constricted upper end 38. The cold air descends clear to the bottom and then passes inwardly under the bottom edges of this middle casing and of the inner casing 34, immediately surrounding the radiator 11. The greater volume of air passes between the radiator 11 and the inner casing 34, but a portion of the descending cold air passes between the inner casing 34 and the middle casing and is deflected by constricted portion 38 over the upper end of the radiator 11, thence upwardly and outwardly through the central portion of the radiator.

The advantage of the triple casing lies in the presence of this air chamber, which serves to insulate the outermost column of cold air from the innermost column of hot air.

Appellant urges that Short contributed to the pipeless furnace art, among other things, the idea of a triple casing, thereby making provision for this extra air chamber. Appellee contends that such was not Short's patent disclosure, and, if his discovery be limited to the use of an extra air chamber in a pipeless furnace, it was, in view of the prior art, no invention, and the claim is invalid.

Claim No. 1 reads as follows:

"1. The combination, with a floor, of a heater having a drum, means for heating said drum, a second drum surrounding the first-mentioned drum, and spaced therefrom, a third drum surrounding both drums and constricted at its upper end, and means for causing the cold air to pass downwardly outside the third drum, whereby the heated air passes upwardly between said drum and is directed away from the floor."

Opposing counsel do not agree upon what constitutes the last element in the combination, namely:

"Means for causing the cold air to pass downwardly outside the third drum, whereby the heated air passes upwardly between the said drums and is directed away from the floor."

In giving the proper construction to this claim we cannot overlook the fact that appellant entered a crowded department of the heating art. The file wrapper is likewise instructive and illuminating.

After numerous claims had been rejected, the claim in question was presented, reading as follows:

"A combination with a floor, of a heater having a drum, means for heating said drum, a second drum surrounding the first-mentioned drum and spaced therefrom, a third drum surrounding both drums and constricted at its upper end, and means for supporting said drum from the floor of the room to be heated, and means for causing the cold air to pass downward outside the third drum, whereby the heated air passes upwardly between said drums and is directed away from the floor."

The examiner stated in respect to this claim as thus drawn:

"Claim 1 is found to twice introduce the same matter, namely, means for supporting said drums from the floor of the room to be heated, and means for causing the cold air to pass downwardly outside the third drum, the casing tube being thus twice involved."

Thereupon applicant amended his claim by striking out the words "means for supporting the said drum from the floor of the room to be heated." This amendment was in response to the objection set forth in the letter quoted above. It follows, therefore, that both the Patent Office and the applicant construed the otherwise ambiguous element, "means for causing cold air to pass downwardly outside the third drum, whereby the heated air passes upwardly between the said drum," as synonymous with the element, "means for supporting the said drum from the floor of the room to be heated." No escape from this conclusion is apparent. Likewise, we find no other rational explanation of this last element in the combination as finally allowed. Such a definition is consistent with the asserted claims of the patentee in his specifications heretofore quoted. Wherein did patentee expect to economize in fuel through the employment of a small furnace, if this were not his intention? Again, how did the patentee hope to obtain selected and preferred locations for his heater if his invention did not call for a heater for each room?

Moreover, the prior art was full of patents, an examination of which discloses pipeless furnaces of the general character used by appellee and appellant in their commercial structures, and wherein reference was made to an insulating chamber or medium. For example, in the patent to Evans, No. 496,193, patentee in his specification says:

"In the drawing *a* is the exterior shell of the furnace within which all the internal flues, passages, channels and accessories are contained. *b* is a similar internal casing located within the exterior shell *a*. *This casing* b *may be made double, or in other words, jacketed so as to afford a passage* c' *for air to pass in order to prevent cold air from impinging upon the hotter interior member of the double casing.*"

In the patent to W. R. Kloeb, No. 765,143, patentee sought protection of an improvement in furnaces. In his specifications he stated:

"This wall, meaning wall *b*, as well as the wall *c* next within, may be of metal covered with asbestos, or other suitable nonconducting and noncombustible material, or a corrugated asbestos board or the like can be employed for this use or in conjunction with a sheet metal interior. * * * Any suitable arrangement may be adopted at this point to maintain the separation of the cold and hot air currents and to sustain the circulation of air herein provided for."

In view of these and other patents, it would be at best but an exercise of mechanical skill to provide a third air chamber to separate the cold-air chamber from the hot-air chamber. In other words, if the sole asserted novelty of Short's discovery consisted of the use of triple casing in place of the double casing so as to more effectually separate the cold-air from the hot-air passages, no invention was disclosed and the claim would be invalid.

If the Patent Office was justified in its allowance of claim 1, it was due to the last element in this claim in combination with the others, which combination produced a heater that possessed the virtues claimed for it by the patentee in his specifications. Such a heater was small, economical of operation, easily operated from the room to be heated. Its operation did not require heating of the entire house but merely a single room.

The particular form of the third drum represented by element 5 might also well have been considered by the Patent Office in giving recognition to this claim.

Clearly, if the last element mentioned in the patent refers to the outer casing *2*, and supports the drum from the floor of the room to be heated, and such is the construction we give to it, then no infringement is shown.

### Doyle and Wollenhaupt Patent.

[2] The three claims here in issue are:

"1. A furnace of the character described combining a heater having passages projected therefrom, two concentric circumferential casings surrounding said heater providing two chambers communicating at their base, the outer casing having a rigid heater passage terminal plate circumferentially continuous therewith and the inner casing having an offset portion united to the margins of said plate providing an areaway for said heater passages.

"2. A furnace of the character described combining a heater having passages projected from its various compartments, two concentric casings surrounding said heater, providing two chambers communicating at their base, said casings at their upper portions forming conductor passages for the chambers respectively, one to admit cold air into the outer chamber and the second for discharging the heated air from the inner chamber, the outer casing having a heater face plate circumferentially continuous therewith as a terminal for said heater passages and the inner casing having an offset portion united to the margins of the face plate providing an areaway for said heater passages.

"3. A furnace of the character described combining a heater having passages projected therefrom, a casing surrounding said heater having a rigid passage terminal portion continuous with the circumference of said casing, a second casing within said first casing divisional of two chambers communicative at their base, said second casing having an offset portion connecting with said rigid portion of said first casing providing an areaway for said heater passages."

A prior patent to Strong, No. 1,002,776, is cited both on the construction and the validity of these three claims. In the Strong patent, patentee was endeavoring to provide an improved furnace casing which might be shipped in knocked-down condition and easily and quickly set up. The patent here under consideration was merely an improvement on the Short patent in which the outer casing has a "rigid heater passage terminal plate circumferentially continuous therewith as a terminal for said heater passages and supports the doors thereof." The application for patent was denied by the examiner and the board of appeals, but was finally allowed by the Commissioner of Patents. Adopting the argument of applicant's attorney, distinguishing this patent from the Strong patent, the Commissioner of Patents says:

"Applicants state that in such a furnace it is of prime importance to have the air in the outer or cold chamber considerably colder than the air in the inner or heating chamber. Unless this is true, the heated air in the interior will not rise.

"Applicants therefore have departed from the prior art, represented by Strong by removing what they call their heater face plate 8 outwardly, so that the plate 8 is a continuation circumferentially of the outer casing instead of the inner casing as shown in Strong.

"They contend that they obtained several advantages over this construction, first, by removing the plate further from the heater it will not become so hot and therefore conduct the heat to the inner casing, as would Strong's plate 5; * * * second, the plate 8 is located outwardly by the offset 27, so as to correspond circumferentially with the exterior casing, the parts can be much easier assembled as no difficulty would be experienced in getting to the bolts or rivets holding the parts together; and, third, the applicants' plate 8 being continuous with their outer casing 26 obviates the inward depression of the Strong device and locates their device so that they can be fully opened.

"The claims all distinguish from the references very much in the same manner, namely, by including the 'rigid passage terminal circumferentially continuous' with the outer casing, and an inner casing having 'an offset portion united to the margins of said plate' or equivalent limitations.

"In view of the alleged advantages, I cannot see that this change is devoid of patentable novelty, and the claims therefore should be allowed."

Having thus secured their patent upon the emphasis placed on the element:

"Two concentric circumferential casings surrounding said heater providing two chambers communicating at their base, the outer casing having a rigid heater passage terminal plate circumferentially continuous therewith"

—patentee is in no position to assert the rigid heater passage terminal plate need not be circumferentially continuous with the outer casing.

Appellee's structure, not having its terminal plate so located, does not infringe.

Other defenses raised by appellee, including an attack upon the validity of these claims, we need not consider.

The decree is affirmed.