MONITOR STOVE CO. et al. v. WILLIAMSON HEATER CO.

(District Court, S. D. Ohio, W. D.   July 14, 1922.)

No. 238.

1. **Patents ☞328—1,002,776, for furnace, held invalid for want of novelty.**
   The Strong patent, No. 1,002,776, for a furnace, *held* invalid for want of novelty.

2. **Patents ☞101—Claim merely adding unpatentable feature to another claim is void.**
   Where two claims of a patent are alike, except that the narrower one calls for an unpatentable addition to what is called for by the other, the narrower claim is void.

3. **Patents ☞168(2)—Applicant, acquiescing in rejection of earlier applications, cannot have patent construed to cover the earlier broader claims.**
   Though acquiescence by an applicant for a patent in the rejection of his applications, and his substitution of narrower claims in a subsequent application, may not create a technical estoppel, he cannot have the narrow claims of the patent enlarged by interpretation to cover the broad generic claims of the applications previously rejected.

4. **Patents ☞328—1,346,801, for single register furnace, held invalid for want of invention.**
   The Doyle and Wollenhaupt patent, No. 1,346,801, claim 2, for a single register furnace having three casings, providing an insulating space through which the air also flows to contribute to the sum total of warm air delivered by the furnace, *held* invalid for lack of invention.

5. **Patents ☞91(4)—Evidence held to show patentees not inventors.**
   In suit for infringement of a patent for a single register furnace, evidence *held* to show that the patentees were not the original inventors of the furnace.

6. **Patents ☞90(7)—Inventor may employ others to reduce invention to practice.**
   An inventor does not have to reduce his idea to practice by his own hands, but may let the work out by contract; and where an inventor employed a company to manufacture what he had conceived, the company's employees, who reduced the idea to tangible form, were not the inventors.

In Equity. Suit by the Monitor Stove Company and another against the Williamson Heater Company. Bill dismissed.

W. R. Wood and Joseph S. Graydon, both of Cincinnati, Ohio, for plaintiffs.

Walter F. Murray and Alfred M. Allen, both of Cincinnati, Ohio, Arthur L. Morsell, of Milwaukee, Wis., and Frederick F. Church, of Rochester, N. Y., for defendant.

PECK, District Judge.   Action for infringement of the Strong patent, No. 1,002,776, and of the Doyle & Wollenhaupt patent, No. 1,-346,801.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] As to the Strong patent, No. 1,002,776, issued September 5, 1911, application filed March 6, 1911, validity is denied, but infringement of this patent, if valid, is admitted by defendants.

Samuel D. Strong, now 60 years of age, of Coldwater, Mich., a tinsmith by trade, had for many years been a dealer in furnaces of the old-fashioned type that convey heat by means of pipes to various rooms. He had sold them to farmers, but not to their satisfaction, because such furnaces heated the cellars, and interfered with the use thereof for storage purposes. In the year 1904 he happened to serve upon a committee to install a new furnace in a church of which he was a member. The supplanted furnace took its air supply from registers located about the baseboard, as well as from the outside. Strong remodeled the system, putting a cold-air register in the floor in close proximity to the one which served as a hot-air outlet. Thus was suggested to him the principle of taking the cool air from the room to be heated, and so began in his mind the conception of a single register or pipeless furnace.

In 1908 he outlined to one Harnisch the idea of constructing a pipeless furnace with a single register, the intermediate casing forming an outer space for the descent of the cooler air and an inner space for the ascent of the heated air next the firepot, both inlet and outlet of air to be by the same register. He furnished Harnisch with some sort of sketch of this idea, but exactly what it was does not appear, asked him to erect it, and let him know how it worked. In February, 1909, Harnisch erected such a furnace in his own home, and upon February 20th wrote the Portsmouth Stove & Range Company, with which he was associated in business, describing the "double-header, or the furnace with two casings," and urging on that company the manufacturing of it. He inclosed a pencil sketch and a picture, ingeniously made by the pasting together of parts of two cuts, in a letter written shortly after. The Portsmouth Stove & Range Company ridiculed the proposition. Harnisch never reported to Strong as to its operation, or even that he had built the furnace, nor did he communicate with him in any manner concerning it.

In the fall of 1909 Strong built his first pipeless furnace. It was erected in January, 1910. It did not have the front wall, provided with forwardly projecting flanges at its sides and top, which constitutes the constant and principal element of all of the claims of the patent in suit, but had a flush front; that is to say, the front wall, which carries the fire pit and ash doors, was virtually a continuation of the circumference of the outer casing. In the construction shown by the patent the front wall is continuous with the inner casing, and the space between the two walls is connected by the flanges. Harnisch's furnace had a crudely built countersunk front, with sheet metal connecting offsets. Strong testified that he told Harnisch to build it in that way.

On January 11, 1909, Strong applied for a patent, the main object stated of his invention being to secure the even heating of the room through a circulation of the air, to provide a furnace which was very simple and economical in structure. He broadly claimed the pipeless furnace; that is to say, the register with an intake portion at the outside, a discharge in the middle, the furnace with the outer space for cold

air, the inner space for warm air, communicating at their base. These claims were rejected upon references. They were amended, again rejected October 22, 1909, and thereafter the application was permitted to die for want of further action taken by the applicant within the time prescribed by the rules of the Patent Office. On February 24, 1910, Strong filed another application; the claims being somewhat more limited to structural details. They were rejected by the Examiner, who referred, inter alia, to the patent of Sears, April 27, 1886, and that of Judge, August 2, 1887, and said, April 18, 1910:

"The patents to Sears and Judge, showing the combination of a furnace with a double register thereabove and a double casing, the cold air passing in the outer register to the space between the two casing walls, then to the space between the furnace and inner wall, and out the hot air register, which is removably supported on a seat in the cold air register."

The applicant did not amend further, and the application was abandoned as the other had been. This application, like the former one, did not show the countersunk front.

In 1910 Strong negotiated with the Monitor Company for the construction of a number of pipeless furnaces, and visited the Monitor Company to ascertain the cost and arrange the details. He was desirous of having them made with a flush front, by extending the feed and ash snouts, so as to bridge the space between the two casings, but was told that it could not be done. One Dupuy, who was in the employ of the Monitor Company, took him to the warehouse and showed him an old type of brick-set furnace, made by the Monitor Company.

It was common to construct brick-set furnaces with a recessed front. An illustration of such a one, with a double air jacket, displaying a marked resemblance to Strong's double casing construction, except that it was made in brick, is to be found in the old catalogue of the Carton Company of 1884. A photograph of similar construction at Utica, N. Y., is in evidence. Mr. Strong was not very positive in his testimony that he suggested the recessed front to the Monitor Company, nor would he deny that Mr. Dupuy had shown him that construction in the brick-set, although he does not recall it. The weight of the evidence seems to indicate the parties conferred how best to construct this front, and that the Monitor Company's employees showed him the old brick-set construction, and its front was adopted for the new furnace. Very few changes were necessary in dimensions, but it was necessary to provide connections to which to fasten the rings and casings. Doyle, then pattern maker for the Monitor Company, testified that he figured out the connecting features with Dupuy's assistance. In 1910 75 furnaces were made by the Monitor Company for Strong of this construction, and sold by him, and upon March 6, 1911, he applied for the patent in suit. His broadest claims are as follows:

"6. In a furnace, the combination with the furnace body, of a front wall secured to said furnace body, said front wall being provided with forwardly projecting flanges at its edges and with combustion chamber and ash pit doors; inner and outer casing rings having openings therein to receive said front wall secured thereto, the outer casing rings being secured to the said front wall flanges; and inner and outer casing sections, the outer casing section being secured to said outer casing rings and to said front wall flanges,

the inner casing section being secured to the inner casing rings and to said front wall.

"7. In a furnace, the combination with the furnace body of a front wall secured to said furnace body, said front wall being provided with forwardly projecting flanges at its edges and top and with combustion and ash pit doors, and inner and outer casing members, the outer casing members being secured to said front wall flanges and the inner casing members being secured to said front wall, whereby they are supported in a spaced relation to provide an air chamber between them, the lower edge of one of the outer casing members being secured to said top flange."

In none of his claims does Strong assert himself to be the inventor of, or a desire to secure a monopoly on, the broad idea of the pipeless furnace. He apparently had given over that thought with the abandonment of the two previous applications. Doubtless he had no knowledge of the work of those who had preceded him in the field. He was the first to introduce the pipeless furnace commercially. His work was one of great benefit to the public, as well as to the furnace industry. With the detailed construction shown in his patent he achieved a great success, establishing an industry which has grown to large proportions, and brought an easy means of securing warmth and comfort at moderate cost to a great number of people, particularly those in agricultural sections of the country. Such a patent is not to be lightly stricken down, and in the success of this design we find the answer to the argument that there could be no invention in combining the several old elements found in Strong's claims. Therefore that defense is considered to be not well taken, and we turn to the alleged prior uses and anticipations.

The brick-set furnace was a well-established type, in use long before Strong's work. As shown in Carton's catalogue, it had a recessed front and an inner and outer casing, in general the construction outlined by Strong's seventh claim. The difference is of material rather than structure. If the cut in the catalogue had been handed to an ordinarily skillful furnace mechanic, with directions to reproduce in sheet metal what is shown in brick, there can be scarcely a doubt that he would have produced a structure substantially conforming to Strong's seventh claim. It is to be noted that none of Strong's claims even mention the single register. So far as the seventh claim is concerned, the Carton Company had long done in brick what Strong did in sheet iron. Both were well-known furnace materials. It certainly was not invention to substitute the one for the other; and on the evidence it happened in just that way. Strong, with his larger, but unpatentable, idea of a double case single register furnace, consulted the Monitor Company as to cost and details of construction. Its officers suggested to him a construction like that of the old brick-set furnace; he adopted its recessed front, and the employees of the Monitor Company, with changes of the slightest and most obvious nature to provide fastenings for the casings, worked out the details and embodied Strong's idea in a metallic reproduction of the old brick-set furnace with the recessed front.

The O'Loughlin patent of August 25, 1914, is stated by defendant's counsel to be the best reference in the patent art, and is claimed to present a complete anticipation of Strong. It shows a furnace body, front wall secured thereto, forwardly projecting flanges at its edges, combustion chamber and ash pit doors, the inner and outer casing members,

the outing casing members secured to the front wall flanges, the inner casing members secured to the front wall, whereby they are supported in spaced relation, to provide an air chamber between them, and the lower edge of one of the outer casing members being apparently secured to the top flange. This structure seems to read directly upon claim 7 of the patent in suit.

O'Loughlin deposed that he installed 12 or 15 of his furnaces, the first one upon January 5, 1908, at St. Paul. The photograph of one of them shows the recessed front, the lower edge of the top casing being secured to the flange, the outside casing bolted to the sides of the flange, the inside casing being bolted to the inner portion of the flange. The return air was taken from the various rooms heated as desired.

The Seltzer furnace, it seems to be well established, was designed and constructed by Seltzer at Flint, Mich., and by him sold to one Van Buren, in whose house it was installed in August or September of 1909. The original furnace is in evidence. It shows a front wall secured to the furnace body, the front wall having attached thereto outwardly projecting flanges. These flanges were not cast integral with the front wall, but bolted to it. It has the usual combustion and ash pit doors and inner and outer casing members. The outer casing members are secured to the front wall flanges, and the inner casing members are secured to the front wall. They are thereby supported in a spaced relation to provide an air chamber between them, and the lower edge of one of the outer casing members is secured to the top flange, all as specified in Strong's seventh claim.

The only attempt to differentiate the Seltzer furnace from Strong's by plaintiff's counsel in the argument was that (1) the Seltzer furnace had an eccentric hood or cap, and (2) Seltzer cut out ports at the bottom of the inner casing to permit the air to pass, whereas Strong stepped the casing up upon a ring supported by a leg. Neither of these differences is essential. The eccentric or one-sided hood was probably made to fit the particular location in which the furnace was installed, and does not differ in function from one of the ordinary conical form. The difference between the cutting out of the ports in the inner casing and the stepping of that casing up on a ring supported by legs, is obviously a matter of mechanical choice. The first was a rather rough construction; the second, a finished job. The change certainly required no exercise of the inventive faculties. But, if it did, the old Carton brick-set furnace shown by photograph, Defendant's Exhibit No. 21, installed at 1118 Miller street, Utica, N. Y., since about 1890, had an inner casing stepped up for the same purpose on just such a ring supported by a leg.

The plaintiffs rely upon the Harnisch furnace, built pursuant to a sketch and description given Harnisch by Strong in February, 1909, as an embodiment of Strong's invention, at his instance and request, for experimental purposes, and thus seek to carry the date of his invention back of Seltzer's. If this contention be granted, it would not avoid the prior dates of O'Loughlin and the brick-set furnace. But it is not possible to grant it, because the Harnisch furnace, while it did embody Strong's idea of a double casing, single register furnace, does not respond to the details upon which only Strong succeeded in getting the patent in suit.

For the purpose of this consideration it is assumed that Harnisch was Strong's agent, and that Strong is entitled to Harnisch's detailed structure, as well as to his embodiment of Strong's general idea, although as to the details this is hardly proven with that degree of clearness required of a patentee who is desirous of carrying the date of his invention back of that of a well-established use antedating his application. Torrey v. Hancock (C. C. A. 8) 184 Fed. 61, 107 C. C. A. 79. In Harnisch there is no separate front wall secured to the inner and outer casing, but a mere continuation of the inner casing through which the feed and ash snouts project. The offsets connecting the two casings cannot properly be termed flanges of the front wall. There is nothing to respond to the element of the claim which requires the inner casing members to be secured to the front wall, because, as aforesaid, there is no front wall as such.

It is true that Harnisch's construction might be said to be an equivalent in the rough, if Strong were entitled to broad equivalents. But the brick-set and O'Loughlin furnaces, even if considered merely as part of the art and not as direct anticipations, would leave no room for equivalency sufficiently broad to bring Harnisch's construction within Strong's claims. Therefore the Harnisch furnace cannot serve to carry Strong's date back of Seltzer, and, as aforesaid, it would avail complainant nothing as against O'Loughlin and the brick-set art, if it did.

These considerations impel the result that Strong's seventh claim was void for lack of novelty. How is it with the others? The sixth adds inner and outer casing rings secured to the flanges. The use of such rings was an ancient and common expedient. Identical construction is shown in the Seltzer furnace, above referred to. The Utica brick-set furnace (photograph, Defendant's Exhibit 20) shows the casing ring bolted to a front wall having forwardly projecting flanges. The fifth claim has the added element:

"The bottom outer casing ring being connected to the said furnace body by straps, the bottom inner casing ring being supported in an elevated position by arms mounted on said straps."

To connect the furnace body with the outer casing ring by straps was a very old method of construction, shown in Carton's catalogue opposite pages 23 and 24; also in Mueller's catalogue, and in the Ajax furnace used by Seltzer. As has been said, the use of a leg to support the interior casing ring is shown in the Utica furnace. The mounting of the inner casing supports upon the straps, which extend from the furnace body to the outer casing ring, is a detail of construction that does not appear to involve invention; but, if it did, it was shown in Figure 1 of the O'Loughlin patent above referred to, at *14* and *15*. Other lesser details make up the various elements of the combinations stated in the other claims.

[2] Where a patent contains two claims, which are alike, except that the narrower one of them calls for an unpatentable addition to what is called for by the other, the narrower claim is void. Walker on Patents (5th Ed.) p. 226. In this patent all the other claims are amplifications by unpatentable details of claim 7, which, it has been stated, is considered void for lack of novelty. It is therefore concluded that the Strong

patent is void, when interpreted as limited to the structural details shown in the claims.

Can it be validated by any permissible broader construction? It is not contended that Strong's patent is to be read, despite the specific nature of the claims, as a general claim, by and large, for pipeless furnace construction. To do so would be to ignore, not only the express limitations of the patent itself, but the narrow interpretation which must be given to the language, in view of Strong's two previously abandoned applications.

[3] It is difficult to see any reason why Strong's acquiescence in the rejection by the Patent Office of his original applications containing broad claims and his substitution of the narrow claims on the structural details in the subsequent application should be treated differently, in respect of estoppel, than would be the case if all the proceedings had been a continuation of the original application. But, whether a technical estoppel results or not, it can hardly be claimed that Strong is entitled to enlarge, by interpretation, the structural claims of the patent granted into the broad generic claims of the applications previously rejected. An examination of the art strengthens the belief that Strong's abandonment of his broad claims was deliberate, and that the present ones were intended to be limited to details.

Baldwin (1879) exhibited in Figure 11 of his drawing a single register pipeless furnace having all the fundamental elements of the present device, crude in design, and doubtless of very limited efficiency. Erwin (1893) showed the principle of the return circulation from the rooms in a double-jacketed furnace, using, however, more than one discharge pipe. Judge (1887) set forth the use of a combination register connected with a double pipe, the outer portion for the intake of the cold, and the central for the delivery of the hot, air. Short (1909) was perfectly familiar, apparently, with the single register principle, although his claims, as found in Monitor Stove & Range Co. v. L. J. Mueller Furnace Co., 254 Fed. 62, 165 C. C. A. 472, were limited to a one-room heater depending from the floor. Sears (1886) was similar. Taking the air from the rooms, and returning it by the same or another register, in connection with the use of a double-jacketed furnace, with interior and exterior compartments connecting at the bottom, is also shown in Detweiler (1887), as well as in O'Loughlin, above considered. Therefore the circulation feature was old, the single register was old, and in Baldwin they were shown in combination.

The case, in brief, comes to this: Strong, apparently without knowledge that others had anticipated him, conceived the idea of the pipeless furnace, and taught it to the industry and to the world, but failed in his efforts to secure letters patent upon it, because the art showed that he had in fact been forestalled. He was subsequently granted this patent for the structural details; but a careful examination of the prior art forces the conclusion upon the mind that, not only were the elements of these structural combinations severally old, but they were old in substantially the same combinations. It is therefore concluded that the Strong patent aforesaid is invalid for want of novelty.

## Doyle & Wollenhaupt Patent.

[4] As to the Doyle & Wollenhaupt patent, No. 1,346,801, granted July 13, 1920, application filed March 23, 1915. The device is applicable to that type known as pipeless furnaces. The air is taken in through the outside portion of a combination hot and cold air register, descends through the exterior space between the casing and the so-called nonradiating partition, and ascends between the partition and the furnace proper, and also between the walls of the nonradiating partition, and flows to the room. The claim is very broad:

"2. In a hot air single register furnace, the combination with a heater having projecting ashpit and combustion chamber passages, and three casings one within another in a spaced relation and surrounding the heater, constituting an outer casing extending from the base of the heater to a register in the floor above the heater, an intermediate casing extending from the register to a point slightly above the base of the heater to provide an inner upward hot air passage around and above the heater, and with said outer casing providing an outer downward cold air passage communicating at the base with the upward passage, and the third or inner casing forming a protector for the intermediate casing and therewith forms a narrow intermediate upward air passage or insulating space."

Validity is denied by the defendant; but, if the patent be valid, infringement is admitted. At the time this alleged invention was made, it was common practice to insulate the casings of furnaces of the old-fashioned type having a number of hot air pipes. This was done by means of corrugated metal, which gave a certain amount of air insulation within the corrugations, by asbestos, or by a combination of these two, or by an air space. The pipeless furnace was old, and the use of the inner casing was old, and it was also old to insulate the inner casing by means of asbestos, or corrugated metal, or corrugated asbestos, as in the Harnisch, Seltzer, and O'Loughlin furnaces, or some combination of these materials. It was also old to insulate this casing by means of an air space, as shown in the Thermo catalogue, and in Rainey, whose application was filed December 7, 1914. The use of a space as an insulating means, in which the air flowed up and contributed to the sum total of warm air delivered by the furnace to the rooms, was well known and in common use many years before the applications of these patentees. It is clearly illustrated in the old catalogue of the Carton Furnace Company of 1884 and 1885, in the cut facing page 23, and also in the cut facing page 24. All this is unmistakably apparent. So that, unless we can say that it was invention to use, in the old practice of insulating an inner casing, a type of construction that had long been used for insulating the outer casing, the patent is void.

In this respect the language of the Court of Appeals of the Seventh Circuit, in Monitor Stove & Range Co. v. L. J. Mueller Furnace Co., supra, with regard to the question whether or not there was patentable invention in a similar air space displayed in the Short patent of 1909, in view of the Evans patent and the Kloeb patent, is particularly in point. The court concluded:

"In other words, if the sole asserted novelty of Short's discovery consisted of the use of triple casing in place of the double casing so as to more effectual-

ly separate the cold air from the hot air passages, no invention was disclosed and the claim would be invalid."

[5] But there is even more direct evidence of lack of invention in regard to this patent. In 1912 Byron S. Snyder, a dealer who was handling the Strong pipeless furnace at Homer, Mich., wrote to his cousin and partner, Ezra Snyder:

"I am fixing my furnace over with a double jacket, and will have a Strong-Snyder furnace when I get it done."

Ezra visited him the following January, put his hand into the furnace through a hole in the outside casing, and there felt the double inside casing. This, however, seems to have been a pipe furnace. On February 2, 1914, Byron wrote Ezra:

"I am in favor of making a furnace with only one hot air register, which will be directly above the furnace, and then have two cold air registers to bring it back and put it in at the top of the furnace, or at the side of the extension which goes to the floor above, and let it go down between the outer and inner jackets, the same as Strong's does. * * * I have not received a copy of Sam's [Strong's] patent yet from the Patent Office, but am certain we can make a one register furnace and use Sam's combination hot and cold air register, and he can't say anything to us; but we would have to make some little change from his. We could put another lining inside the inner jacket, and leave it open at top and bottom, to let the air circulate and keep the jacket cool. I mean to make it like the Thermo furnace does, only leave it open at top and bottom. The Thermo Furnace Company use the one-inch space as dead air space, as you will see by the catalogue I sent you. If we made it like this, we could put the two registers on afterwards, if there was a complaint."

Thereafter negotiations and correspondence took place between the Snyders and the Monitor Furnace Company, looking to the manufacture of such a furnace for them by that company. The Monitor Company, which had been manufacturing for Strong, had severed relations with him in January of that year, and the upshot was that upon March 31, 1919, the Monitor Company and the two Snyders entered into a written contract, by which the Monitor Company agreed to manufacture and furnish the Snyders, for sale in certain territory, furnaces of the type therein described, which were to be the same as the Caloric (pipeless) furnace, "except that the same shall be changed, so that the jacket shall be made according to specifications prepared by B. S. Snyder, and subject to the approval of" the Monitor Company. By written addendum of April 7, 1914, to this contract, it is stated:

"Further—that part of the order dated March 19th relating to the inner casing, which is made with extra lining inside of the inside jacket, is to be made as per the sketch attached to this agreement and as agreed to by Mr. B. S. Snyder and the Monitor Stove & Range Company this day. This lining referred to as the inside of the inside jacket is to be made and fastened in a position to allow one-inch space between the inside jacket and this inner lining, and is to be open at top and bottom."

The sketch is not attached to the contract in evidence, and seems to be lost. There is further corroboration of the foregoing in the other correspondence between the two Snyders and Snyder and the Monitor Company, and in the testimony of the witnesses Jameson, Woodrough, and Doyle, and Ezra Snyder himself. B. S. Snyder came to Cincinnati

in March or April, 1914, met the officers of the Monitor Company, advised them of his desire to have the two casing partition in his furnace, open at the top and bottom, and the officers of the company instructed Doyle, who was draftsman, and Wollenhaupt, his associate, to get up such a pipeless furnace with the open inner case in the middle. Doyle testified that the double inner casing suggestion came from the Snyders; that Wollenhaupt and he figured out how they would hang or put that inner casing in. In his testimony he disclaimed repeatedly being the originator of the double inner casing idea, stating that he and Wollenhaupt merely worked out the details. The claim of the patent on which this suit is brought is not based upon the details, but upon the broad idea of the double casing disclosed by the Snyders to the Monitor Company. There is nothing of substance in this second claim which does not appear in the letter of Byron S. Snyder to Ezra O. Snyder of February 2, 1914, above quoted, when read by one familiar with the Strong furnace and the Thermo catalogue and the general construction therein referred to.

[6] It is strongly urged by counsel for plaintiff that Snyder's conception was not reduced to practice, and so cannot prevail over the work of the subsequent patentees, who brought their efforts to an efficient physical structure, and a number of authorities are cited to sustain this proposition. Such, however, was not the situation here. The Snyders conceived and contracted with the Monitor Company for just what they wanted in the way of an interior double casing. The Monitor Company and its employees reduced Snyder's idea, and not their own idea, to tangible form. One does not have to reduce his idea to practice by his own hands. He certainly may let the work out by contract. That was what the Snyders did. Whether the Snyders were the first is not in issue. The evidence shows clearly and convincingly that Doyle and Wollenhaupt did not invent that which is set forth in claim 2.

Claimed prior uses, by Rainey in the furnace installed in the residence of Hays at Kirkwood, Mo., allegedly in August of 1914, and by Mueller, in the house of Brice in Merrill Park, Milwaukee, allegedly in January, 1914, need not be considered nor passed upon, in view of the foregoing, as the conclusions seem inevitable (1) that it was no invention to use the open air space for insulating the middle casing; and (2) that, if it was invention, it was not the work of Doyle and Wollenhaupt.

It is therefore concluded that claim 2 of the Doyle & Wollenhaupt patent aforesaid was invalid for lack of invention and for lack of originality, and consequently the bill must be dismissed, with costs.