## PAINE et al. v. ST. PAUL UNION STOCK-YARDS CO.

Circuit Court of Appeals, Eighth Circuit. October 28, 1929.

No. 7653.

For former opinion, see 28 F.(2d) 463.

Thomas D. O'Brien, of St. Paul, Minn. (Alexander E. Horn and Edward S. Stringer, both of St. Paul, Minn., and Sullivan &

Cromwell, of New York City, on the brief), for plaintiffs in error.

D. L. Grannis, of South St. Paul, Minn., and Frank L. Horton, of Chicago, Ill., for defendant in error.

Before KENYON and VAN VALKEN-BURGH, Circuit Judges, and OTIS, District Judge.

VAN VALKENBURGH, Circuit Judge. The St. Paul Stockyards Company, plaintiff below, brought suit against William A. Paine and others, copartners and stockbrokers, doing business under the firm name of Paine, Webber & Co., defendants, to recover the value of government bonds, aggregating $48,000, on the theory that they had been converted by defendants. The bonds in question had been unlawfully appropriated by one Lindsay, at that time treasurer of the Stockyards Company, and by him deposited with said defendants as collateral security for the purchase price of various stocks and bonds, which he directed defendants, as brokers, to buy for him. Subsequently, because of the state of his account, defendants were compelled to sell these bonds and to credit Lindsay with the proceeds. At the close of the testimony before a jury, both sides filed motions for a directed verdict. The court made findings of fact, and rendered judgment for plaintiff.

This case comes before us a second time. The facts are comprehensively stated in our previous main opinion. 28 F.(2d) 463, 467. Our former decision was that the case must be reversed and remanded for a new trial, upon the primary ground that "there was no substantial evidence supporting the trial court's finding of fact that stocks and bonds ordered by Lindsay were not purchased for him by the defendants, and that the defendants did not give value for the bonds delivered to them." The writer was further of opinion that the trial court failed to exercise discretion upon the merits of the motion for new trial, and that its refusal to grant the motion upon the ground stated might be reviewed and corrected by this court. Upon petition for rehearing we were convinced that the same should be granted, in order that opposing counsel might have opportunity more fully to present their views. The case has been reargued and additional briefs have been filed.

Upon mature consideration we are of opinion that the case should not be reversed because of lack of substantial evidence to support the finding that the stocks and bonds ordered by Lindsay were not purchased for

him by the defendants, and that the defendants did not give value for the bonds delivered to them. The evidence tendered by defendants on this point is fully stated in our former opinion and need not be repeated here. If competent at all, it was concededly not the best evidence that might have been produced. At most, it could be considered only as tending to show a state of facts by no means necessarily convincing. It was uncontradicted, it is true, but it must be remembered that the burden was upon defendants to produce evidence of purchase for value and in good faith. Absent such evidence, or any convincing evidence to that effect, the court could find accordingly. And, if it did so upon the record here presented, this court cannot say that its finding was wholly without substantial evidence to support it.

We consider next the ruling of the trial court upon the motion for new trial. In this connection it is advisable to restate that part of the testimony which bears most directly upon this point. The witness Byrne, manager for defendants, testified as follows:

"Q. What was done by Paine, Webber & Co. with reference to his order to purchase 50 shares of Swift's stock? A. We transmitted it to our Chicago office.

"Q. State whether or not the stock was purchased. A. The stock was purchased.

To this testimony plaintiff objected, and moved that it be stricken out, on the ground that the witness, being at St. Paul, could not have personal knowledge of whether stocks were purchased at Chicago or elsewhere. The objection and motion were overruled. Byrne further testified:

"Q. Now, you say that the stock was purchased upon the Chicago market? A. Yes, sir.

"Q. Why do you say that? A. Well, he transmitted the order to Chicago, and Chicago reported the purchase to us.

"Mr. Grannis: I move to strike out the answer.

＊　　＊　　＊　　＊　　＊　　＊

"The Court: For the present, let the motion be denied.

"Q. Are you entirely familiar with the method of transacting business by Paine, Webber & Co.? A. Yes, sir.

"Q. How long have you been with that company? A. Nearly 27 years.

"Q. State whether or not that company operates its branch offices throughout the United States. A. Well, various cities.

"Q. In various cities in the United States? A. Yes, sir.

"Q. State whether or not in this matter you followed the ordinary and usual course of business in transmitting this order. A. Yes, sir.

"Q. Did you receive a report in the ordinary and usual course of business that the stock was purchased? A. Yes, sir.

"Q. And, based upon your knowledge of the methods of business as pursued by Paine, Webber & Co., you stated that the stock was purchased, relying upon that report that you received?

"Mr. Grannis: That is objected to as incompetent, irrelevant, and immaterial, and no foundation laid. I would like to have our objection stand on all this.

"The Court: It may so stand. Objection overruled.

"Q. Was there anything different in this transaction from the regular and ordinary purchase of stock or bonds, upon orders of your customers? A. No, sir."

The plaintiff again moved to strike out this testimony; the court answering: "Well, the motion may be denied for the present, anyway."

Byrne further testified that defendants' books, kept in the regular course of business, showed the orders from Lindsay and purchases made for him by defendants. As previously found by us, "at no time during the trial was any of this testimony stricken out, nor was objection sustained to any part of it." To some parts of it no objection was made. The opinion of the trial court in deciding the case contained the following paragraphs:

"Defendants rest their claims on the testimony of the witness Byrne, and the various references to their books of account, and claim that thereby they have shown that the commodities which purported to be the subject of the various transactions between themselves and Lindsay, were actually bought and sold. To so hold would be to strain very considerably the effect of the evidence. If not altogether incompetent, through lack of preliminary proof, the reference to the books of account was at least unsatisfactory, and was not convincing. It is not at all improbable, certainly not impossible, that the books of account in any event would be kept as though the purchases and sales had actually been made, and it is clear that they were so kept without any knowledge whatever, on the part of those keeping the books, as to what the truth actually was in reference thereto.

"One of the two necessary facts for defendants to prove was that they actually bought and sold the commodities which were the subject of the transactions between them and Lindsay. Knowing the great importance of this point, and that the only evidence thereof was in their own hands, their failure to meet it by direct proof is quite persuasive that the truth, if disclosed, would be against them, and overcomes any prima facie effect which a reference to the books of account may have had. Without doubt, there are living witnesses who can testify directly to the facts. They have not been produced. Under such circumstances, the book evidence we have had is of negligible value. Mr. Byrne in form testified that the stocks and bonds had been purchased, but he claimed no actual knowledge of the facts and had none.

"The evidence will not warrant a finding that defendants paid value for the bonds."

■■ Defendants filed a motion to reopen the cause for further hearing and permitting the introduction of further testimony upon one issue, to wit, whether the defendants actually paid value for the securities transferred and delivered to them by Lindsay. It was averred that defendants did actually pay value for said securities, and that, if the court was still of opinion that the record did not then establish the fact by competent evidence, further conclusive competent evidence, incapable of contradiction, could and would be produced, if said cause were reopened. As an alternative, if the court should not see fit to reopen the case, defendants moved that a new trial be granted for reasons materially affecting their rights. Attention was called to the action of the court during the trial in overruling objections to the testimony offered, whereby defendants were led to assume its sufficiency. When the decision was rendered some time later, defendants had no opportunity to offer evidence conceived to be of greater competency. This motion was supported by exhaustive affidavits. In denying the motion to reopen the case and for a new trial, the trial judge, in a concurrent memorandum opinion, assigned the following reason for his ruling:

"This is a motion for a new trial on various grounds. These narrow down to the question of whether or not defendants should be granted such new trial for the purpose of enabling them to adduce evidence of which they had knowledge at the time of the trial, but which was not offered thereat. If a new trial should be had, and this evidence be admitted, and be believed by the trier of facts, whether court or jury, it would doubtless result in a substantial modification of the decision which has been made in the case.

"Speaking generally, an order granting or denying a motion for a new trial in the federal court is discretionary with the trial court, and is not reviewable on writ of error or on appeal. Holmgren v. United States, 217 U. S.; 509, 521, 30 S. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778; Clyde Mattox v. United States, 146 U. S. 140, 147, 13 S. Ct. 50, 36 L. Ed. 917.

"The action of the court, however, must not be arbitrary. It may not grant a new trial merely because one of the parties so desires, or for reasons which are not recognized as legitimate grounds for such action. The court should keep within well-recognized rules in dealing with such a motion. Otherwise there is an abuse of discretion, and in such cases, very properly, a review may be had. United Press Associations v. National Newspapers' Association, 254 F. 284 (C. C. A. 8th Circ.); Yeates v. United States (C. C. A.) 254 F. 60; Vallery v. Glenwood Irr. Co., 248 F. 483 (C. C. A. 8th Circ.).

"By section 726, Revised Statutes (section 1246, Compiled Statutes 1918 [28 USCA § 391]), this court is given power to grant new trials in cases where there has been a trial by jury 'for reasons for which new trials have usually been granted in the courts of law.' Diligent search does not reveal a case where new trial has been granted under such circumstances as those here involved, and the court is inclined to the view that, however desirable it might be in this case to grant the motion, such action by the court would not be in harmony with long-established rules. Defendants had made no preparation to introduce the necessary evidence at the trial.

"The court is of the opinion that it has no power or right to grant a new trial under the circumstances here involved, and makes this statement so that defendants may have the benefit, if any, thereof, on review."

Beyond question, the general rule is that the granting of a motion for new trial is addressed to the sound discretion of the trial judge, and that his denial thereof will ordinarily not be reviewed by an appellate court. Taylor v. United States (C. C. A. 8) 19 F.(2d) 813. But it is generally well settled that this rule has exceptions, and that, if an abuse of discretion, or a failure to exercise discretion, is shown, the matter may be reviewed. Glenwood Irr. Co. v. Vallery (C. C. A. 8) 248 F. 483; United Press Ass'ns v. Nat. Newspapers' Ass'n (C. C. A. 8) 254 F. 284; Yeates v. United States (C. C. A. 5) 254 F. 60; Higgins v. United States (C. C. A. 6) 185 F. 710; Felton v. Spiro (C. C. A. 6) 78 F. 576, 583; Usher v. Scranton Ry. Co. (C. C.) 132 F. 405, 406; Dwyer v. United States (C. C. A. 9) 170 F. 160; Norton v. City Bank & Trust Co. (C. C. A. 4), 294 F. 839, 843 (citing Ellis v. Ginsburg, 163 Mass. 143, 39 N. E. 800); Mattox v. United States, 146 U. S. 140, 13 S. Ct. 50, 36 L. Ed. 917.

In the latter case the Supreme Court held that: "When the trial court excludes affidavits offered in support of a motion for a new trial, and due exception is taken, and that court, in passing upon the motion exercises no discretion in respect of the matters stated in the affidavits, the question of the admissibility of the affidavits is preserved for the consideration of this court on a writ of error, notwithstanding the general rule that the allowance or refusal of a new trial rests in the sound discretion of the court to which the application is addressed."

In Felton v. Spiro, the Circuit Court of Appeals for the Sixth Circuit, speaking through Judge, now Chief Justice, Taft, held: "When a trial court, upon a motion for a new trial, refuses to consider a ground urged therefor, or to exercise its discretion, for the reason that it considers it has no power to do so, such refusal may be assigned as error. Mattox v. U. S., 13 S. Ct. 50, 146 U. S. 140, 36 L. Ed. 917 followed."

In Usher v. Scranton Railway Company the holding was that the granting of a new trial is discretionary with the court and subject to no fixed rule except a consideration of what is just. In the opinion it is said: "It is well settled that the court may grant a new trial of its own motion, if necessary to accomplish justice. 14 Encycl. Plead. & Prac. 932."

In Norton v. City Bank & Trust Company the Circuit Court of Appeals for the Fourth Circuit quotes from the opinion of the Supreme Court of Massachusetts in Ellis v. Ginsberg, 163 Mass. 143, 39 N. E. 800, and says: "We are not prepared to hold that the trial judge may not, in the exercise of a sound discretion, at the instance of a party or on his own motion, set aside a verdict or grant a new trial, when he is convinced that, because of some accident, mistake, or misfortune in the conduct of the trial, a new trial is necessary to prevent a failure of justice."

In the light of the rule announced in the decisions just cited, we consider the grounds stated by the trial court for its action in overruling the motion for new trial. There is a suggestion that the evidence sought to be introduced cannot be viewed as newly discovered, because, constructively, at least, within the knowledge of defendants at and before the trial. This, however, was not the real

ground upon which the application for new trial was based. It was urged, not without support in the record, that the evidence tendered by them, upon the point of purchase in good faith and for value, was received by the court over the objection of opposing counsel, was allowed to stand, and was never stricken out, although a motion to that effect was interposed; that defendant relied upon this state of the record, and was given no opportunity thereafter to supply evidence conceived to have greater competency, although such evidence, as shown by the affidavits accompanying the motion for new trial, could readily and convincingly be supplied.

The trial judge was evidently impressed by these affidavits. He says: "If a new trial should be had, and this evidence be admitted and be believed by the trier of facts, whether court or jury, it would doubtless result in a substantial modification of the decision which has been made in the case." This would indicate that the court, influenced by a consideration of the evidence tendered, would have been inclined to grant the new trial prayed, if he had felt he had the power to do so. But his final conclusion was that he had not such power, and so the affidavits were dismissed from further consideration, and played no part in the decision reached. That decision was based exclusively upon the erroneous conception that the court had no power to grant a new trial under the circumstances. That the trial judge recognized the hardship resulting, and perhaps entertained a lingering doubt as to the soundness of the reason assigned for his action, may be inferred from his closing language, that he "makes this statement so that defendants may have the benefit, if any, thereof on review."

In the situation presented we do not deem it to be within our province to volunteer further suggestions upon the merits of the controversy. As it is within the range of possibility that a new trial may be granted, questions hereafter to be presented, if at all, may differ materially from those now before us. What we do hold, and that only, is that the trial court had power, within the exercise of a sound discretion, to grant the new trial prayed; that, in denying such power, it failed to exercise that discretion; that for this reason, as in case of a manifest abuse of discretion, its action in denying a new trial is subject to review and correction. The case will be remanded to the trial court, with directions that it exercise its discretion under the power lodged in it, and decide whether or not a new trial shall be granted.

It is so ordered.