## NORTHWESTERN NAT. LIFE INS. CO. v. BANNING.

### No. 9520.

Circuit Court of Appeals, Eighth Circuit.

Feb. 27, 1933.

Philip E. Horan, of Omaha, Neb. (Arnold Hobbs, of Minneapolis, Minn., on the brief), for appellant.

John C. Barrett, of Omaha, Neb., for appellee. .

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is an appeal from a judgment entered against the appellant company on two policies of life insurance issued by appellant to the husband of appellee, in which policies appellee was beneficiary.

The action was commenced in the state court, and duly removed on the ground of di-versity of citizenship. A jury was waived and the case tried to the court.

Although the action was brought upon two policies, the questions arising upon this appeal relate to only one of them. The policy in question, No. 257,977, dated January 14, 1926, provided for the payment of $3,000 upon proof of the death of the insured. It is conceded that this amount became due at the death of the insured. Attached to and made a part of the policy, and bearing the same date, was a rider, which is set out in the margin.[1]

Among the provisions of the policy was the following: "This policy shall participate in the surplus and the Company will annually determine and account for the portion of the divisible surplus accruing hereon. * * * Such dividends shall be the property of the Insured, and at his option may be. * * * (b) Applied to Increase the Amount of Insurance by the purchase of paid-up participating additions to the policy (without disability benefits)."

---

[1] Double General Accident Death Benefit

Northwestern National Life Insurance Company Of Minneapolis, Minnesota

Agrees to pay Three Thousand Dollars in addition to the face amount of the policy of which this provision is a part, making a total of Six Thousand Dollars, in the event of the death of the Insured from accidental causes prior to the anniversary of the policy nearest age sixty, in accordance with the following provisions:

(a) Due proof shall be furnished the Company that death resulted directly and independently of all other causes from bodily injury effected solely through external, violent, and accidental means, of which, except in case of drowning or internal injuries revealed by autopsy, there is a visible contusion or wound on the exterior of the body, and that such death occurred within sixty days after sustaining such injury.

(b) This Benefit does not cover death resulting directly or indirectly from suicide while sane or insane, from injury intentionally inflicted by another person, from riot or insurrection, from military or naval service in time of war, from engaging in submarine or aeronautic operations, from physical or mental infirmity, from illness or disease of any kind, or from poisoning or bacterial infections other than infection occurring in connection with and in consequence of an accidental wound.

(c) This Benefit shall apply only if the policy is in full force and effect at the death of the Insured and before any disability benefit has been allowed. It does not apply to paid-up or extended insurance granted upon lapse or surrender, nor to paid-up additions purchased by dividends, and shall terminate if and when the policy becomes paid up under the accelerative endowment dividend option.

(d) This Benefit is granted in consideration of the application therefor and the additional quarterly premium of $1.68—which is included in the premium on the face of the policy, and which shall be payable only until the termination of the Benefit from any cause.

This agreement is attached to and is part of Policy No. 257977 insuring the life of James Leroy Banning.

Dated at Minneapolis, Minnesota, this Fourteenth day of January 1926.

Pursuant to the foregoing provision, the insured, in 1931, took out additional insurance and paid for the same by dividend on the policy No. 257,977. The additional insurance agreement is set out in the margin.[2]

It was stipulated by the parties to the action "that the assured met his death by insecticide poisoning which contained forty (40%) per cent. nicotine sulphate," and "that the assured's death was accidental; that it was not suicide."

Defendant admitted liability under the policy in controversy for $3,000; also for $1,399 under the additional term insurance certificate.

Plaintiff contended that defendant was further liable for the additional $3,000 mentioned in the rider to the policy; also for an additional amount of $1,399 under the provisions of the additional term insurance certificate in connection with the policy.

The trial court held with the plaintiff on both contentions, and judgment was entered accordingly.

The present appeal questions the correctness of these two holdings.

█ 1. As to the item of $3,000 mentioned in the rider to the policy, the issue depends upon the construction to be given to provision (b) of the rider, which states exceptions to the liability of the company; and especially to the construction to be given to the words in said provision "or from poisoning or bacterial infections."

It is conceded that the insured died from taking poison, and the crucial question is: Does the word "poisoning" in the phrase above quoted create an independent exception to liability, or does it simply qualify the word "infections," as does the word "bacterial"?

The appellant contends that the word "poisoning" is either a noun or a participle,

[2] Northwestern National Life Insurance Company
Minneapolis, Minn.

Hereby Agrees to Pay

—One Thousand Three Hundred Ninety-Nine—Dollars immediately upon receipt of due proof of the death, within the term period stated herein, of James LeRoy Banning, the Insured under Policy No. 257977, to the person who is then beneficiary under said policy, or to such other beneficiary as may be designated in accordance with the provisions of said policy.

This insurance is purchased by a dividend of $13.-86 declared upon said policy, is effective on and from the date of this certificate, expires without grace or notice on January 14th, 1932, and is not renewable. This insurance is without the right to participation in the surplus, or the right to loans or non-forfeiture values, but is otherwise subject to the provisions of said policy.

Minneapolis, Minnesota, the 23 day of April, 1931.

and that there is no foundation either in the canons of grammatical construction or in general good usage for attempting to make of it an adjective. Appellant asserts in its brief: "There is no 'poisoning' as an adjective to be found in any dictionary."

It is permissible for the court to take judicial notice of the meaning of words as given in standard works such as dictionaries, though caution is to be exercised in so doing. 23 C. J., p. 173, § 2006; Werk v. Parker, 249 U. S. 130, 39 S. Ct. 197, 63 L. Ed. 514.

In "A New English Dictionary" by Sir James Murray (Oxford), vol. 7, p. 1058, is found authority for the use of the word "poisoning" as a participial adjective. Similar authority is to be found in Wright's "English Dialect Dictionary," vol. 4, p. 569. In both dictionaries, one of the definitions of "poisoning" is given as "poisonous."

In the realm of medicine, we find that there are poisoning infections which are not bacterial. Sporotrichosis, and actinomycosis are infections by fungi, so recognized and described in Dorland's "American Illustrated Medical Dictionary" (14th Ed.), 1927.

Having thus found that the word "poisoning" may properly be used as an adjective, we have little difficulty in agreeing with the finding of the trial court that the word is so used in the clause in question. The grammatical structure of the clause leads to that conclusion. Indeed, if the word "poisonous" were used instead of "poisoning," no question would be raised as to grammatical structure. Further, if "poisoning" were used as a noun, we should expect to find the word "from" repeated before the word "bacterial."

The wording of the rider was made by the appellant company, and, if there is any ambiguity in the language, the doubt must be resolved against the company. Royal Ins. Co. v. Martin, 192 U. S. 149, 162, 24 S. Ct. 247, 48 L. Ed. 385; Gorman v. Fid. & Cas. Co., 55 F.(2d) 4 (C. C. A. 8); Wharton v. Ætna Life Ins. Co., 48 F.(2d) 37 (C. C. A. 8), and cases cited; Southern Surety Co. v. MacMillan Co. (C. C. A.) 58 F.(2d) 541, 548; Graham v. Business Men's Assur. Co. of America (C. C. A.) 43 F.(2d) 673, and cases cited.

We conclude that the word "poisoning" qualifies the word "infections" in the clause in controversy; that the cause of death of insured was not within the exceptions of the rider; and that the item of $3,000 under the rider was properly included in the judgment.

█ 2. The doubling of the item of $1,399 under the additional term insurance certificate

is claimed to result from the rider attached to the original policy. We do not think the claim can be sustained. The wording of the rider is not to the effect that all amounts due under the policy will be doubled if death results from the causes mentioned; but that an additional $3,000 will be paid. It is true that this doubles the amount specified in the original policy; but it does not follow that all amounts which may become due will be doubled.

The additional term insurance was taken out five years after the original policy with the rider attached became effective. We think it would require clear language to make the rider cover the additional term insurance under such circumstances. The certificate of additional term insurance makes no reference to the rider as such or to the provisions thereof.

But it is argued that the certificate of additional term insurance recites that it is subject to the provisions of the policy, and that it follows that the provisions of the rider apply because the rider is part of the policy, made so by the terms of the rider.

Admitting the full force of the argument, it does not follow that the amount of additional term insurance should be doubled, if death results from causes set out in the rider.

Provision (c) of the rider reads as follows: "This Benefit shall apply only if the policy is in full force and effect at the death of the Insured and before any disability benefit has been allowed. *It does not apply to* paid-up or extended insurance granted upon lapse or surrender, nor *to paid-up additions purchased by dividends,* and shall terminate if and when the policy becomes paid up under the accelerative endowment dividend option." (Italics ours.)

The additional term insurance here under discussion was purchased by a dividend under the original policy. It would seem, therefore, to be excluded from the benefits of the rider by the express language thereof.

We think the court erred in including this doubling item of $1,399 in the judgment.

As to the item of $400 attorney's fees, no question is raised in the briefs or on the oral argument. It is allowable under the Nebraska statute and practice. See Nebraska Comp. Stat. (1922), § 7811; People of Sioux County, Neb. v. National Surety Co., 276 U. S. 238, 48 S. Ct. 239, 72 L. Ed. 547; Globe Indemnity Co. v. Sulpho-Saline Bath Co., 299 F. 219 (C. C. A. 8); Kaneft v. Mutual Benefit Health & Acc. Ass'n, 102 Neb. 87, 166 N. W. 121.

It is our conclusion that the sum of $1,399, with interest thereon at 7 per cent. from the date of the death of said insured to the date of the judgment, should be remitted from the amount recovered, as of the date of the judgment. It will, therefore, be ordered that the judgment be reversed unless, within twenty-five days from the filing of this opinion, the appellee files in the office of the clerk of the United States District Court for the District of Nebraska a remittitur of said $1,399, with interest as aforesaid, and within ten days thereafter files with the clerk of this court a certified copy of the remittitur so filed. If such remittitur and certified copy are so filed, the judgment, less the amount so remitted, will stand affirmed. If such remittitur and certified copy are not filed within the time aforesaid, the judgment will stand reversed and the case will be remanded. If the remittitur and certified copy are not so filed, costs will be taxed against the appellee.