**GREGORY et al. v. MUTUAL LIFE INS. CO. OF NEW YORK.***

**No. 10248**

Circuit Court of Appeals, Eighth Circuit.

July 5, 1935.

As Corrected Aug. 19, 1935.

*Writ of certiorari denied 56 S. Ct. 157, 80 L. Ed. —.

W. J. Dungan, of Augusta, Ark. (Ross Mathis, of Cotton Plant, Ark., on the brief), for appellants.

A. F. House, of Little Rock, Ark. (Frederick L. Allen, of New York City, and Rose, Hemingway, Cantrell & Loughborough, of Little Rock, Ark., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

Appellants, as plaintiffs below, brought this action to recover on three life insurance policies written by appellee on the life of William N. Gregory. These policies provided for the payment of double indemnity in the event death resulted directly from bodily injury received independently and exclusively of all other causes, and that such bodily injury was effected solely through external, violent, and accidental means.

The insured was killed in an airplane crash, in the state of Illinois, about thirty miles from the city of St. Louis, Mo., on April 18, 1933. The appellee insurance company paid the face of the policies, but declined to pay double indemnity, and this action resulted.

The insured was a planter, merchant, and banker, residing at Augusta, Ark. He appears to have been a man of some considerable means. His nineteen year old son, William N. Gregory, Jr., was the owner of an airplane and held a transport pilot's license at the time of the accident involved, and had been flying for some three years prior to that time. The plane was registered in the Department of Commerce of the United States, in the name of William N. Gregory, Jr., who was in fact the owner thereof, although the money with which to purchase it had been furnished by

his father, just as he had been furnished money by his father for the purchase of automobiles. The insured could not pilot an airplane, had no knowledge of flying, but at the time of the fatal accident he was a guest passenger in the passenger compartment of his son's plane, which was being piloted by his son, bound for the city of St. Louis, where the insured was going on some private business. The plane consisted of two compartments, one for occupancy by passengers, and the other by the pilot, and conversation could not be carried on by the passengers with the pilot while the plane was in operation. The plane was in sole charge of William N. Gregory, Jr., from the time it left Augusta, Ark., the morning of April 18, 1933, to the time of the fatal crash as above noted.

The policies contain provision that the insurance company should not be liable for double indemnity for death resulting from "participation in aeronautics."

There was evidence that the insured had interested himself in procuring a flying field for Augusta, Ark., where he lived. He had taken only a few trips in an airplane before this one.

The action was tried to the court without a jury, and on motion of the defendant, the court declared as a matter of law that "one who rides in an airplane as a passenger participates in aeronautics within the meaning of the terms of the policies," and also declared as a matter of law that "one who rides in an airplane as a guest participates in aeronautics," and that "one who owns airport property, who had participated in the formation of a corporation which was to engage in commercial flying and transportation, who has a minor son who is a qualified pilot, who furnished the money used in purchasing the plane, and who rides with such minor son, participating in aeronautics," and entered judgment for the defendant, dismissing plaintiff's complaint.

We put aside as not material to the issues the declaration of law with reference to the ownership of airport property and the participation in the formation of a corporation which was to engage in commercial flying, and the furnishing of money for use in purchasing the plane.

There is little, if any, conflict in the material evidence, and the decision is dependent upon the construction to be given to the term "participation in aeronautics," as applied to the facts in this case.

Aeronautics is said to be the art of sailing in or navigating the air. It is also defined as "the science or art of aerial navigation," [1] and the question is whether one who rides in an airplane as a passenger can be said to be participating in aeronautics within the meaning of the terms of the insurance contracts in question.

In the last edition of Encyclopedia Britannica, appears an article headed "Aeronautics." It would, of course, not be feasible to reproduce the article in this opinion, but it is interesting to observe what the author of this article thought was included in the term "aeronautics." We find such sub-headings as the following: Early History of Artificial Flight; Principles of Flight; Early Mechanical Machines; The Modern Era; The Science of Aeronautics; Aerodynamics; The Wind Tunnel; Scale Effect; Life and Drag; Stalling; Wind Tunnel Results; Conditions for Stalling; Stability.

It would not occur to one reading this article on aeronautics that a passenger on a modern passenger airplane was participating in aeronautics. He is not interesting himself in a single one of the topics discussed in the article referred to; he is making no research, no investigation, no experiment; he has no control of the machine, and not even any power of communicating with the pilot. Those who ride the plane for some purpose connected with its operation, as for observation or inspection, or for making tests or experiments, may well be indulging in some branch or activity connected with aeronautics; but one who rides the plane for the sole purpose of going some place, of being transported by it as a passenger, is not, we think, in the absence of specific words requiring such construction, participating in aeronautics. He does not belong to the same craft or class as those skilled artisans who participate in the construction, management, or operation of the airplane.

In this field there have been revolution-

---

[1] New Century Dictionary: Modern Theories; The Aeroplane; Prevention of Stalling; Load Factor; Methods of Propulsion; Engine Requirements; Power and Height; Supercharging; Carburation; Flow Meters; Modern Engines; The Airscrew or Propeller; The Aerofoil Theory; Navigation and Instruments; Finding the Vertical; Turn Indicator; Compass, Altimeter, Speedometer and Gauges; Sextant; Instruments for Research; The Hump Speed.

ary developments, particularly in the last ten or fifteen years. When the terms "engaging in aeronautics," and "participating in aeronautics," were first introduced into insurance contracts, the science or art was in its experimental stage. Any person who then had to do with the airplane was participating in aeronautics. The acrobat who staged a balloon ascension at a country fair, and thrilled the onlookers by dropping from a balloon in a parachute, was participating in aeronautics. When Colonel Lindbergh made his perilous solo flight across the Atlantic, he was participating in aeronautics. In the earlier stages of the development of the science or art, everyone connected with it was participating in a dangerous experiment or adventure, and there was no place about the instrumentalities for any one who was not participating in the venture. But in the last ten or fifteen years, these implements of the air have been developed from the stage of the dangerous experiment to a well-recognized standard means of passenger transportation. Now, one may know nothing of the science or art, have no interest in the mechanism, and no control over it, but may yet utilize it as a means of transportation. The terms must be considered in the light of these known revolutionary changes and development in the art.

That this transformation of the airplane and the art or practice of aeronautics from the field of experiment and hazardous adventure has been recognized by some of the insurance companies is evidenced by the fact that they have inserted in their policies as explanatory of the word "participation," the words, "as a passenger or otherwise," thus indicating with some degree of certainty what is intended to be included in these terms.

In Goldsmith v. New York Life Ins. Co. (C. C. A.) 69 F.(2d) 273, 274, the policy contained the words, "from engaging, as a passenger or otherwise, in submarine or aeronautic operations," and this court held, by a divided court, that the insurance company was not liable where the insured was killed while a passenger in an airplane. Many of the decisions are reviewed in Judge Sanborn's opinion in that case, and a

further review of them would serve no useful purpose here. In the course of the opinion it is there said: "While without the words, 'as a passenger or otherwise,' there would be room for doubt as to the meaning and scope of the expression, 'engaging in aeronautic operations,' the addition of those words does away with any ambiguity and shows that the phrase, 'engaging as a passenger or otherwise in aeronautic operations,' is intended to cover one who is temporarily occupied in being a passenger in a plane as well as one who takes an active part in the operation or makes aeronautics his business."

In other words, in that case, the parties to the contract in effect agreed upon the scope to be given to the phrase. Without these explanatory or qualifying words, it cannot be said, in view of the development of the art as an accepted means of passenger transportation, that the language is free from ambiguity or doubt. Nearly a million passengers were carried by airplane last year. Insurance companies know that the public to which they are selling insurance is to a greater or less extent so traveling. These companies either intend to insure against accident resulting from the use of the airplane as a means of transportation, or they do not, and it is only fair that if they do not intend to include such hazards that it should be made so clear that a person of ordinary intelligence on reading the contract offered will readily understand that such hazard is not covered. The expression, being doubtful and ambiguous, must be construed most strongly against the insurance company. Wharton v. Ætna Life Ins. Co. (C. C. A. 8) 48 F. (2d) 37; Gorman v. Fidelity & Casualty Co. (C. C. A. 8) 55 F.(2d) 4; Northwestern Nat. Life Ins. Co. v. Banning (C. C. A. 8) 63 F.(2d) 736.

We conclude that the words, "participation in aeronautics," as used in these policies, do not, properly construed, include a passenger on a transport airplane, and the lower court was in error in so holding.

The judgment appealed from is reversed and the cause remanded with directions to enter a summary judgment for the appellants, plaintiffs in the trial court.