## SULZBACHER v. CONTINENTAL CASUALTY CO.
### No. 10702.

Circuit Court of Appeals, Eighth Circuit.
Feb. 18, 1937.

Roscoe C. Van Valkenburgh, of Kansas City, Mo. (Arthur Miller, Alton Gumbiner, and Miller, Gumbiner & Sheffrey, all of Kansas City, Mo., on the brief), for appellant.

Lowell R. Johnson, of Kansas City, Mo. (Arthur C. Popham and Henry M. Shughart, both of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, THOMAS, and FARIS, Circuit Judges.

GARDNER, Circuit Judge.

This was an action brought by appellant as plaintiff on a policy of life insurance which contained provision for double indemnity in the event of death by accident. The parties will be referred to as they appeared below.

The insured, Dr. Bruno L. Sulzbacher, was plaintiff's husband, and plaintiff was named as the beneficiary in the policy. It was admitted at the trial that the policy was in full force and effect at the time the insured met his death, November 14, 1933; that he was killed while riding as a passenger in an aeroplane, as a result of the accidental crashing of the aeroplane; and it was admitted that proper proof of death had been submitted. At the close of plaintiff's evidence, defendant interposed a motion for a directed verdict, which, so far as here important, reads as follows:

"Comes now the defendant at the close of the plaintiff's evidence and moves the Court to charge the jury that under the evidence in this case plaintiff is not entitled to recover against the defendant and that their verdict shall be in favor of the defendant, because *there is no evidence in the record upon which to base a recovery on the policy and endorsements in evidence.*" (Italics supplied.)

This motion was granted, and judgment was thereafter entered thereon, dismissing plaintiff's cause of action. In due time plaintiff filed her motion for a new trial, which was very elaborate and specified many grounds, among others that the court had erred in sustaining defendant's motion for a directed verdict. This motion was denied.

On this appeal plaintiff urges that it was error to grant defendant's motion for a directed verdict, and that the court erred in that it abused its discretion, or that it failed to exercise its discretion in considering her motion for a new trial. The issue involved below was whether the accident was within the provisions or coverage of the policy.

The policy contained various provisions classified under paragraphs designated as part I to part XII, both inclusive. Preceding these paragraphs is the following:

"The insurance given by this policy is against loss of life, limb, limbs, sight or time resulting from personal bodily injury (suicide or self-destruction while either sane or insane not included) which is effected solely and independently of all other causes by the happening of a purely accidental event, all in the manner and to the extent hereinafter provided."

Part I bears the heading "Specific Indemnity," and enumerates specifically the indemnities provided for. Part II is headed "Weekly Indemnity." Part III is headed "Double Indemnity," and, so far as here pertinent, is as follows:

"The amounts specified in Parts I and II shall be doubled if the insured is injured under the following circumstances, to-wit: While a passenger in or on a public conveyance provided by a common carrier for passenger service (including the platform, steps or running board of railway or street railway cars, or while boarding or alighting therefrom) or while in a passenger elevator (elevators in mines excepted. * * *"

Part X is headed "Not Covered," and, so far as here pertinent, reads as follows:

"The insurance given by this policy does not cover * * * injury sustained while participating in or in consequence of having participated in aeronautics."

In addition to the provisions contained in the foregoing enumerated twelve parts, there was attached to this policy a rider which, so far as here important, reads as follows:

"For the consideration expressed in the policy to which this rider is attached, the Company further agrees that it will pay indemnity to the extent of the minimum amount provided in the policy for any loss specified therein which shall result from injury incurred by the Insured while he is riding as a fare-paying passenger either in a licensed passenger aeroplane or in a licensed passenger dirigible airship which in either instance is provided by an incorporated common carrier for the transportation of passengers and which also is being operated at the time of the injury by a licensed pilot upon a regular passenger route between definitely established airports."

The entire policy was received in evidence. In her petition plaintiff declared upon the entire policy as renewed, alleged that it was in full force and effect at the time of the accident and death of the insured, and that the defendant agreed to insure the life of the insured in the principal sum of $10,000. It was also alleged that the insured was injured and died as the result thereof, while he was riding as a fare-paying passenger, either in a licensed aeroplane, or in a licensed passenger dirigible, which in either instance was provided by an incorporated common carrier for the transportation of passengers, and which was also being operated at the time of the injury by a licensed pilot upon a regular passenger route between definitely established airports.

The defendant by way of answer interposed a general denial of all the allegations of the petition and specifically denied in a separate paragraph of the answer that the insured was riding as a fare-paying passenger in an aeroplane; denied that the aeroplane in which he was riding was a licensed passenger aeroplane; denied that the aeroplane in which the insured was riding was provided by an incorporated common carrier for the transportation of passengers, or that the plane was being operated on a regular passenger route between definitely established airports, or by a licensed pilot.

It is apparent from the record that counsel on either side were of the view that the provision contained in part X to the effect that the insurance did not cover "injury sustained while participating in or in consequence of having participated in aeronautics," precluded a recovery where the insured was being transported by aeroplane as a passenger. The court, doubtless largely influenced by the attitude of counsel, was of the same view, as appears from the opinion delivered in connection with the granting of defendant's motion for a directed verdict. The court there said:

"As the policy was in its original form it excluded all injuries caused by accidents resulting from traveling in airplanes or other methods of navigation of the air."

The court then expressed the view that the question was whether or not the evidence was sufficient to bring the case within the provisions of the above-quoted rider. Concluding that the evidence was not so sufficient, the motion was granted.

On motion for a new trial, there was for the first time called to the court's attention the decision of this court in Gregory et al. v. Mutual Life Insurance Company, 78 F. (2d) 522, wherein we held that one being transported on an aeroplane as a passenger was not participating in aeronautics. This opinion was not published in the advance sheets of the Federal Reporter until September 30, 1935. Application for certiorari was denied by the Supreme Court October 28, 1935, 296 U.S. 635, 56 S.Ct. 157, 80 L. Ed. 451, while this case was tried October 17, 1935.

In denying the motion for a new trial, the court stated that the case had been tried by both parties upon the claim that the accident from which the insured died was covered by the rider of the policy, and that the chief ground urged for a new trial was that the accident was covered by some other provision of the policy. In the course of the court's opinion denying motion for a new trial, it is said:

"If, at the trial, counsel for the plaintiff had called my attention to the provision in the policy now relied on and had urged that the case be submitted under that provision in the policy probably I would have permitted the plaintiff to amend her petition and probably would have submitted the case to the jury. I would have done that irrespective of whether the Gregory opinion had been called to my attention. The decision of the Court of Appeals in that case is so clearly right that I would have been inclined, without having read that opinion, to rule as that court ruled on a like question.

"But the question to be decided now is not that question (which would only affect this case) but the more important question as to whether a precedent is to be established that will result hereafter in a multitude of orders granting new trials, where parties having tried cases on definitely stated theories and having lost, discover new theories upon which they might have tried their cases. If the learned Court of Appeals shall establish such a rule I shall cheerfully follow it, but I am not willing myself to establish it for the district court."

The failure of counsel timely to call the attention of the court before which a cause is being heard to a controlling precedent or authority is always regrettable and sometimes inexcusable, but "even the good Homer sometimes nods," and, in the circumstances here disclosed, we think the failure of counsel to have discovered and called to the attention of the court the opinion in the Gregory Case may be attributable to mistake, inadvertence, or excusable neglect. It is true that generally speaking this court will not on appeal consider a question not presented to the lower court [Trapp v. Metropolitan Life Ins. Co. (C.C.A.8) 70 F.(2d) 976], yet, this court, to prevent a miscarriage of justice, may notice a plain error [Trapp v. Metropolitan Life Ins. Co., supra]. The court and counsel on either side were manifestly in error on a vital question of law as applied to the facts and issues involved in this case. Counsel for the plaintiff, as was their duty, promptly brought the matter to the attention of the court as soon as the error had been discovered by them and while the court still had jurisdiction over and control of its judgment, so that the error could have been remedied. The court declined to consider the merits of the motion, expressing the view that it was "better that a new trial should not be granted in a case on any such ground (even though at a second trial a different result might be reached) than that a bad precedent should be established."

One of the purposes of a motion for new trial is to call to the court's attention errors that may have been committed during the trial, whether those errors be such as have been discovered since the trial, or were committed in opposition to the moving party's contentions asserted at the trial. In other words, the motion may not only be made on the ground of newly discovered evidence, but upon newly discovered law; in fact, the trial court may, during the term at which the judgment was rendered, on its own motion, set aside its judgment and grant a new trial. The motion affords the court an opportunity to correct error in its proceedings without subjecting the parties to the expense attendant upon an appeal.

As has already been observed, the entire policy and all the facts upon which

the liability was predicated were in evidence, and under the pleadings and the motion interposed by defendant for a directed verdict, which was based "on the policy and endorsements in evidence," the contentions later urged by plaintiff on motion for new trial were presented and might have been considered by the court though not stressed by counsel. It is apparent that the court would not have granted the motion for a directed verdict had its attention been called to the decision in the Gregory Case. Under such circumstances, manifest error appearing in the granting of the motion for a directed verdict, we should reverse the judgment. Trapp v. Metropolitan Life Ins. Co. supra; Trapp v. Metropolitan Life Ins. Co. (C.C.A.8) 72 F.(2d) 374; Gregory v. Mutual Life Ins. Co. (C.C.A.8) 78 F.(2d) 522; Murdock v. Ward, 178 U.S. 139, 20 S. Ct. 775, 44 L.Ed. 1009; Fourth Nat. Bank of New York v. Francklyn, 120 U.S. 747, 7 S.Ct. 757, 30 L.Ed. 825; Goodcell v. Graham (C.C.A.9) 35 F.(2d) 586; Seufert Bros. Co. v. Lucas (C.C.A.9) 44 F.(2d) 528; Santaella & Co. v. Otto F. Lange Co. (C.C.A.8) 155 F. 719.

■ Under the facts disclosed by the record, it was, we think, the duty of the lower court to consider the motion for a new trial on its merits.

■ Ordinarily, this court will not disturb the ruling of the trial court in denying a motion for a new trial because such a motion is addressed to the sound judicial discretion of the trial judge, but where the trial judge fails to exercise his discretion, and declines to hear the motion on its merits, the ruling will be reviewed on appeal. Paine v. St. Paul Union Stockyards Co. (C.C.A.8) 35 F.(2d) 624; Glenwood Irr. Co. v. Vallery (C.C.A.8) 248 F. 483; United Press Ass'n v. National Newspapers Ass'n (C.C.A.8) 254 F. 284; Kargman v. Grocery Center, Inc. (C.C.A.7) 83 F.(2d) 617, 618.

Nothing can be added to the exhaustive opinion of Judge Van Valkenburgh on this subject in Paine v. St. Paul Union Stockyards Co., supra, where the authorities are collected and reviewed. The same principle was involved in Kargman v. Grocery Center, Inc., supra, in which the court considered an order that was discretionary with the trial court. In the course of the opinion, it is there said:

"True, the statute provides that the court 'may allow,' etc. While this gives the court discretion in applying it, this is not an arbitrary or unreasonable discretion, but a judicial discretion, reviewable where the record discloses its improper or unreasonable exercise. The denial of such a claim upon the sole ground that it would be bad practice and a dangerous precedent to make in any case allowance to attorneys for interveners, would in our judgment be an improper exercise of that discretion, or, more accurately, a failure or refusal to exercise it."

So, in the instant case there has been a failure or refusal to exercise the discretion vested in the trial court to consider and to act upon a motion for a new trial. The judgment appealed from is reversed and the cause remanded with directions to grant plaintiff a new trial.