## BAYERSDORFER v. MASSACHUSETTS PROTECTIVE ASS'N, Inc.
### No. 3671.

District Court, S. D. Ohio, E. D.
Sept. 13, 1937.

Smith, Francis, & Irvine, of Steubenville, Ohio, for plaintiff.

Garfield, Cross, Daoust, Baldwin & Vrooman, of Cleveland, Ohio, for defendant.

UNDERWOOD, District Judge.

This is an action brought by Helen S. Bayersdorfer, beneficiary, under an accident insurance policy issued by the Massachusetts Protective Association, defendant herein. Judgment in the sum of $5,000, the face value of the policy, is asked with interest. The policy in question was issued to Stanley W. Bayersdorfer by the defendant association August 15, 1933. On April 7, 1936, while said policy was in full force and effect, the insured was riding as a fare-paying passenger in an airplane operated by Transcontinental & Western Air, Inc., over the regular route from Camden, N. J., to Pittsburg, Pa. The plane struck a tree near Uniontown, Fayette county, Pa., and the insured was accidentally killed. The plaintiff, as beneficiary, complied with all the terms and requirements of said policy, but payment was refused by the defendant association on April 16, 1936; the defendant contending that recovery for the death of the insured was barred by the terms of his policy. It was provided in the contract that: "This policy does not cover death or other loss due to disease, whether acquired accidentally or otherwise, or sustained as the result of participation in aviation, æronautics or subaquatics, or while engaged in rioting, fighting, or strikes."

A jury trial having been waived, the case was tried to the Court.

The sole issue presented is: "Was the insured participating in aviation or æronautics when he met his death?" If a fare-paying passenger, riding in a commercial transport plane over a regular air route, can be considered as participating in aviation or æronautics, then the defendant should have judgment. On the other hand, if such a passenger cannot be considered as so participating, then the plaintiff is entitled to recover.

For the purposes of this case, dictionary definitions offer but slight assistance, since each word is defined, but not the phrase. Webster's New International Dictionary (1924) defines "participate" as follows: "To have a share in common with, to take part, to partake, share, as to participate in a debate." "Aeronautics" is defined by the same authority as: "The science or art of ascending and sailing in the air, as by means of a balloon, ærial navigation, ballooning." "The art or science of locomotion by means of æroplanes" is the definition given for "aviation." From the fore-

going definitions, it would appear to be a logical conclusion that one participating in aviation or æronautics would have some part in the art of science of flying as distinguished from a mere fare-paying passenger carried by a commercial air liner.

The decisions on the point here in controversy must be carefully scrutinized and considered, since there are many forms of the so-called æroplane exclusion rider or provision and all cases deciding such questions are not necessarily applicable in this instance. The earliest case of note was Bew v. Travelers' Insurance Co. (1921) 95 N.J.Law, 533, 112 A. 859, 14 A.L.R. 983. This case does not show whether the passenger was a fare-paying passenger or not; but the decision was rendered while aviation was in its infancy and before the establishment of most of our modern air routes. It was held that a passenger was participating in æronautics. In effect, it was said that aviation was nonoccupational. The same result was reached in Travelers' Insurance Co. v. Peake (1921) 82 Fla. 128, 89 So. 418. The latter case was based upon the Bew Case, supra. Meredith v. Business Men's Accident Association of America (1923) 213 Mo.App. 688, 252 S.W. 976, was to the same effect.

Tierney v. Occidental Life Insurance Co. (1928) 89 Cal.App. 779, 265 P. 400, held that a passenger struck by a propeller after the flight was not killed in consequence of participating in æronautics; but the court in reaching that conclusion said that while the insured was flying as a passenger he was so participating. However, the latter point was not at issue.

The next cases in point were Head v. New York Life Insurance Co., and Head v. Hartford Accident & Indemnity Co. (C.C.A. 10th, 1930) 43 F.(2d) 517. These cases held that there was no difference between participate as a passenger in aviation, and just participate in aviation; that both included a passenger. It should be noted again that the insured was not a paying passenger over a regular air route; but was an insurance man who was getting information in order to write a property policy on the plane. In the next two cases in point, the opposite conclusion was reached; that is, that a passenger was not participating in aviation. The first case in this group, Missouri State Life Insurance Co. v. Martin (1934) 188 Ark. 907, 69 S.W.(2d) 1081, was decided on the basis that a passenger was not in "aviation operations," but dicta in that case and the decision in the case of Martin v. Mutual Life Insurance Co. (1934) 189 Ark. 291, 71 S.W.(2d) 694, said that a passenger did not participate in aviation. In neither case was the insured a fare-paying passenger, but an invited guest.

In chronological order, the next case was Sneddon v. Massachusetts Protective Association (1935) 39 N.M. 74, 39 P.(2d) 1023. In construing the very same provision as that contained in the policy at issue, the court held that a passenger was participating in æronautics or aviation. The court said that on the weight of authority, there was a distinction between "participating" and "engaging."

The next case was Gregory v. Mutual Life Insurance Co. of N.Y. (C.C.A. 8th, 1935) 78 F.(2d) 522, writ of certiorari denied (1935) 296 U.S. 635, 56 S.Ct. 157, 80 L.Ed. 451. It held that a passenger having no control over the plane was not participating in æronautics.

It will be noticed that although a majority of cases construe "participating in aviation, æronautics," to include a passenger, still most of the recent cases reach the opposite conclusion. These recent cases have been decided since aviation has reached a commercial basis and for this reason are entitled to careful consideration. From the decided cases, it appears that the fact that a passenger pays fare and flies over a regular air route is of no consequence as long as he has no part in the management of the plane.

Further, it is well established that a provision, "engaging in aviation," is construed as not including mere passengers. Masonic Accident Insurance Co. v. Jackson (1929) 200 Ind. 472, 164 N.E. 628, 61 A.L.R. 840; Price v. Prudential Insurance Co., 98 Fla. 1044, 124 So. 817; Flanders v. Benefit Association R. E. (1931) 226 Mo.App. 143, 42 S.W.(2d) 973; Peters v. Prudential Insurance Co. (1929) 133 Misc. 780, 233 N.Y.S. 500. These cases are of interest here only because most of them distinguish between "engage" and "participate." They say that the latter word is more inclusive; however, such statements are for the most part pure dicta.

This court has found no authority directly in point and binding upon it. In Travelers' Protective Association of America v. Prinsen (1934) 291 U.S. 576, 54 S.Ct. 502, 503, 78 L.Ed. 999, the only case before the Supreme Court of the United States where this line of cases was mentioned, the court cited the Head and Bew Cases, supra,

for the proposition that one who becomes a passenger in an æroplane may thereby participate in æronautics. However, in the preceding sentence the court said: "We assume in favor of the respondent that 'participation' in the carriage of explosives imports something more than the presence of the assured in the vehicle of carriage." It may be observed that certainly one riding on a truck loaded with explosives shares the danger with the driver as fully as the passenger in a plane shares it with the pilot; yet the court assumed that something more that mere presence in the vehicle was necessary for participation. Also, it must be noted that in referring to a situation involving participation in æronautics, the court used the word "may" and later denied a writ of certiorari in the Gregory Case, supra. Therefore the Prinsen Case can hardly be considered authority for the proposition that a fare-paying passenger riding in a commercial transport plane must be participating in aviation or æronautics.

Two cases have been decided by the Court of Appeals of the Sixth Circuit dealing generally with this subject. The first one, First National Bank of Chattanooga v. Phœnix Mut. Life Ins. Co. (C.C.A. 6th, 1933) 62 F.(2d) 681, held that an insured who was the owner of a plane and who directed its use and its flight, though he did not pilot it, was participating in æronautic operations. The facts readily distinguish it from the present case, for in the case now being considered, the insured had nothing to do with the plane except to ride in it, as a fare-paying passenger. Although the Circuit Court of Appeals distinguished between "engage" and "participate," saying that the former is more narrow in its compass than the latter, yet the court expressly reserved the case where an insured pays his fare and is merely transported by plane; that is, where he has no control over the venture.

In the second case, Mayer v. New York Life Ins. Co. (C.C.A.6th 1934) 74 F.(2d) 118, 99 A.L.R. 155, the court held that a passenger was included in the exclusion provision "resulted from engaging as a passenger or otherwise in æronautic operations." The phrase "as a passenger" readily distinguishes that case from the one at issue.

The cases cited merely shed some light on the problem; they do not solve it. No binding authority directly in point has been found and the decisions upon the question here at issue are in conflict. Insurance history throws some further light on the subject. At the time this policy was issued, a great many of the leading insurance companies had abandoned the general exclusion provision "participating" or "engaging" in aviation and had adopted language with a definite meaning. Some of them expressly permitted fare-paying passengers over regular air routes to be covered by their insurance. As pointed out in the Gregory Case, supra, aviation at the time this policy was issued (1933) was in a commercial or occupational era as distinguished from its earlier nonoccupational status or its experimental stage. The court, in the Gregory Case (C.C.A.) 78 F.(2d) 522, at page 524, said: "Insurance companies know that the public to which they are selling insurance is to a greater or less extent so traveling [by plane]. These companies either intend to insure against accident resulting from the use of the airplane as a means of transportation, or they do not, and it is only fair that if they do not intend to include such hazards that it should be made so clear that a person of ordinary intelligence on reading the contract offered will readily understand that such hazard is not covered. The expression, being doubtful and ambiguous, must be construed most strongly against the insurance company."

In the opinion of this court, the foregoing quotation ably sums up the conclusions to be drawn from the use of the phrase "participating in aviation, æronautics." It is doubtful whether by any process of logical reasoning the phrase can be said to include a passenger who is transported by a plane the control of which is entirely in the hands of others. Different courts have come to different conclusions in their interpretation of the phrase. Insurance companies have changed their exclusion riders or provisions to include the phrase "as passengers or otherwise" or some similar specific language. Who is excluded by the limitation "participating in aviation, æronautics"? Does it exclude from protection all those who sell tickets for the air line companies; the executive who directs the activities of the company from a safe and remote office; the taxi driver who brings the passengers to the field? It is obvious that at least some of these persons who perform services are participating in aviation or æronautics and are not in the least endangered thereby. Due to the scope of modern aviation, many persons, directly

492

or indirectly, are remotely or immediately "participating in aviation, æronautics." Hence, it becomes evident that a line of demarcation must be drawn somewhere, beyond which the exclusion is not effective.

■ The most that can be said for the exclusion provision used in the policy here at issue is that it was ambiguous and uncertain in meaning. If one contemplating the purchase of such a policy should inquire of his lawyer whether or not he would be protected as a fare-paying passenger on a commercial transport plane, the lawyer could only have advised his client that the decisions of the courts were in conflict and the meaning ambiguous and uncertain in this judicial district prior to this case. This court is of the opinion that the judicial meaning, or the legal meaning, of terms used in contracts is that meaning attached by the courts. That where the courts are substantially in hopeless conflict, it cannot be said that the meaning is clear or unambiguous.

This court therefore finds that the defendant, the Massachusetts Protective Association, Inc., did on the 15th day of August, 1933, insure Stanley W. Bayersdorfer under an accident insurance policy in the sum of $5,000; that Helen Bayersdorfer was the beneficiary under said policy; that said policy was in full force and effect on April 7, 1936, when the insured accidentally met his death while riding as a fare-paying passenger in a commercial transport plane, over an established passenger route; and that the plane in question was wholly under the control of others, the insured having no connection with it except that of a fare-paying passenger.

■ The court further finds that said policy contained an exclusion provision exempting the insurer from liability for death resulting from participation in aviation, æronautics. That the exclusion provision was ambiguous and is to be construed most strongly against the party to the contract who selected that phrase. Mutual Life Ins. Co. v. Hurni Packing Co. (1923) 263 U.S. 167, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102; National Surety Co. v. Veneer Co. (C.C.A.6th, 1933) 66 F.(2d) 88.

■ It is therefore held that the insured was not participating in aviation or æronautics at the time of his accidental death, within the meaning of the terms of said policy. That the plaintiff, beneficiary, is entitled to recover the death benefits stipu-

lated in the policy as $5,000, with interest thereon at the rate of 6 per cent. per annum from April 16, 1936, the date on which the defendant denied liability.

Entry accordingly.